In re Charles Lee MOBERLY, Debtor.

Charles Lee Moberly, Plaintiff,

v.

Kathleen Ann Johnston, Defendant.

Bankruptcy No. 00–11241.
Adversary No. 00–1161.

United States Bankruptcy Court,
N.D. California.

June 14, 2001.

Laura Tracy Hawkins, Palmer, Jones, Hawkins and Strong, Novato, CA, for debtor.

## Memorandum of Decision

ALAN JAROSLOVSKY, Bankruptcy Judge.

### I. Introduction

Plaintiff and debtor Charles Moberly was married to defendant Kathleen Johnston for about three years, from 1991 to 1994. They had no children. Their marital settlement agreement required Moberly to pay Johnston $675.00 per month for nine years as spousal support. In this adversary proceeding, Moberly seeks to have the obligation declared nondischargeable pursuant to § 523(a)(5) of the Bankruptcy Code as a disguised property settlement. He also seeks to recover about $14,000.00 Johnston garnished from his wages after his Chapter 7 filing as well as damages for violation of the automatic stay. Johnston argues that the obligation is actually support, but if it is not it is still nondischargeable pursuant to § 523(a)(15) of the Bankruptcy Code.

### II. Nature of the Obligation

In order to determine whether a debtor's obligation is in the nature of support, the court must ascertain the intention of the parties at the time they entered in their agreement. *In re Combs*, 101 B.R. 609, 615 (9th Cir. BAP 1989). In interpreting a marital settlement agreement, the bankruptcy court must ascertain the parties' intent by looking to the substance of the obligation. *Shaver v. Shaver*, 736 F.2d 1314, 1316 (9th Cir.1984). If the provision's intended function was not to provide a necessity of life, it is ordinarily held to be not actually support and accordingly dischargeable no matter what it was called. See *Shaver*, 736 F.2d at 1316.

The evidence is overwhelming that Moberly's obligation is not actually in the nature of support regardless of what the parties called it. While the parties were married, they had borrowed $150,000.00 from Johnston's mother. Johnston's primary concern during the divorce proceedings was that Moberly pay back his half of the obligation. In her pleadings in the state court, Johnston requested that "the court reserve jurisdiction over the issue of spousal support as a means to secure [Moberly's] obligation to pay one-half of the total community debt." The amount of the "support" was the same as Moberly's share of the debt to Johnston's mother. Most tellingly, there was no showing of need, as Johnston's income was in the same range as Moberly's. Johnston in fact did not need the payments for anything except paying her mother. All of the $22,000.00 Moberly paid on the obligation prior to his bankruptcy filing, as well as the $14,000.00 garnished after the filing, was paid by Johnston to her mother.

### III. Applicability of § 523(a)(15)

As an affirmative defense, Johnston alleged that the obligation was nondischargeable pursuant to § 523(a)(15) of the Bankruptcy Code even if was not truly support. That section makes any obligation incurred in connection with a divorce agreement nondischargeable if the debtor is able to pay it or discharging the obligation would not result in a benefit to the debtor which outweighed the detriment to the former spouse. The problem with this affirmative defense is that when Congress added the section to the Bank-

ruptcy Code in 1994 it required that any such claim be made within 60 days after the date first set for the meeting of creditors. 11 U.S.C. § 523(c); FRBP 4007(c). This is unlike most dischargeability actions (including those arising out of § 523(a)(5)) which can be brought at any time. FRBP 4007(b).

As a result of the interplay between § 523(a)(5), which has no time limit, and § 523(a)(15), which has a time limit, Johnston argues that she is in a statutory bind. Had she known before the deadline for her § 523(a)(15) action that Moberly was going to file a § 523(a)(5) action, she could have preserved her claim. However, since Moberly did not file his action until after the deadline for § 523(a)(15) actions she was unable to raise the issue in a timely manner.

■■■ Johnston's first argument is that Moberly is barred by laches from asserting his claims because he did not raise them before her deadline. The court does not find this argument compelling, as FRBP 4007(b) specifically permits him to file his complaint "at any time." Equitable principles are not a basis for rulings contrary to the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure. Moreover, Johnston had every reason to know that the "support" provided in her agreement was intended to be in the nature of a property settlement and that she did not need the payments from Moberly to provide for her shelter, food or other necessities of life. Under these circumstances, she could have filed a timely 523(a)(15) action as a protective measure.

The court has found no cases which would allow a creditor to maintain an action governed by § 523(c) after the deadline just because the need to bring the action was not mature or apparent before the deadline. The closest thing the court found was dicta by Judge Tchaikovsky in

*In re Hackney*, 93 B.R. 213, 219 n2 (Bkrtcy.N.D.Cal.1988). In that case, the trustee had recovered a criminal restitution payment as a preference and Judge Tchaikovsky found that the creditor's nondischargeability action was revived. However, that nondischargeability action was not governed by § 523(c). In a footnote, the judge mused:

Because this case involves a debt excepted from discharge other than under 11 U.S.C. § 523(c), a declaration of nondischargeability may be requested at any time. Bankruptcy Rule 4007(b). It is unlikely that a creditor with a reinstated claim seeking a declaration of nondischargeability under 11 U.S.C. § 523(c) would be in a position to file such a complaint within the time provided by Bankruptcy Rule 4007(c). In such an instance, a court might conclude that the thirty day grace period for filing a claim under Bankruptcy Rule 3002(c)(3) might also authorize a 30 day grace period for filing complaints for nondischargeability. On the other hand, a court might conclude that this unequal result is consistent with the inequity already established by 11 U.S.C. § 523 and Bankruptcy Rule 4007 for the two types of debts.

This court does not see a basis in FRBP 3002(c)(3) for allowance of a dischargeability action barred by FRBP 4007(c). If the court were to fashion such a result outside the terms of the Code and rules, it would be undoing the compromises made by Congress in order to add § 523(a)(15) in the first place. The court accordingly concludes, as Judge Tchaikovsky said it might, that "this unequal result is consistent with the inequity already established by 11 U.S.C. § 523 and Bankruptcy Rule 4007."

■■■ Johnston argues that she is entitled to raise § 523(a)(15) as a defense and set-

off even though affirmative relief is time-barred. There is some authority for this position. *In re America West Airlines, Inc.*, 217 F.3d 1161, 1167 (9th Cir.2000); *In re KF Dairies, Inc.*, 143 B.R. 734, 737 (9th Cir. BAP 1992). However, it is clear that the benefit to Moberly if the debt is discharged outweighs the detriment to Johnston. She does not need the money to live on. Her only adverse consequence will be inability to repay a debt to her mother, who has never taken any action against Johnston when payments were not made by Moberly.

### IV. Violation of the Automatic Stay

 Moberly argues that he is entitled to recover damages for violation of the automatic stay. His argument is that since the obligation is not actually in the nature of support it was not excepted from the automatic stay by § 362(b)(2)(B) of the Code, which excepts from the stay the collection of support. The problem with this argument is that the obligation is and always was support, according to the state court decree incorporating the agreement of the parties. However, even though the obligation is support, it is not *actually in the nature of support* and therefore, as a result of this adversary proceeding, subject to discharge. In order to be excepted from the stay, the Code only requires that the obligation be support, not that it actually be in the nature of support. Accordingly, Johnston did not violate the automatic stay when she continued to collect from Moberly postpetition.[1]

### V. Recovery of Postpetition Involuntary Payments

The court sees no basis for the recovery of funds which Johnston garnished from Moberly's wages postpetition. As noted above, the garnishment was not a violation of the automatic stay. Moberly's discharge was not entered until August 15, 2000; garnishments recovered before this time are clearly not recoverable.

Moberly has not cited any case which would permit the court to order the return of support funds received after the petition but before the court declared them dischargeable. Assuming the court has such power, Moberly did not supply the court with evidence sufficient for it to determine how much was taken from him after his discharge. Since he has not met his burden of proof on this issue, the court will not order the return of any of the garnished funds.

### VI. Conclusion

The obligation is not actually in the nature of support, and is therefore dischargeable pursuant to § 523(a)(5)(B). Johnston may retain any funds she has already received, but will hereafter be permanently enjoined from further collection action against Moberly. Each side shall bear its own attorneys' fees and costs.

This memorandum constitutes the court's findings and conclusions pursuant to FRCP 52(a) and FRBP 7052. Counsel for Moberly shall submit an appropriate form of judgment forthwith.

---

1. Moberly was never without a remedy. He could have sought a preliminary injunction in this adversary proceeding, or he could have sought an expedited trial date. He did neither.